Bobby G. CLAY, Plaintiff,

v.

The ENSIGN–BICKFORD COMPANY, a Connecticut corporation, Defendant.

Civ. A. No. C–746.

United States District Court
D. Colorado.

Dec. 22, 1969.

\*   \*   \*   \*   \*

Albert B. Wolf, Denver, Colo., for plaintiff.

Peter H. Holme, Jr., Denver, Colo., for defendant.

## MEMORANDUM OPINION

CHILSON, Judge.

This matter came on for trial to the Court without a jury on the first day of December, 1969. The Court heard the evidence and argument of counsel and took the matter under advisement. The Court is now duly advised.

The plaintiff was injured by a dynamite blast while working for the road maintenance department of Gilpin County, Colorado. The plaintiff claims the blast was premature because of a defect in the fuse used to explode the dynamite and that the defendant as the manufacturer of the fuse is liable to him for his injuries.

The injury occurred on February 9, 1966, while the plaintiff and his co-employee, Bittinger, were engaged in using dynamite to free the flow of water in a stream by blasting an accumulation of ice which was causing the stream to overflow the county highway.

Both the plaintiff and Bittinger had had considerable experience in the use of dynamite and testified that on February 9, they followed the same practices that they had used in the past and which were customarily used by others in blasting operations.

This practice consisted of the use of a length of safety fuse attached on one end to a dynamite cap which was then inserted into a hole in the stick of dynamite. The end of the fuse not connected to the cap is then split with a knife after which the stick, cap, and fuse are positioned and the split end of the fuse ignited. Taking into consideration the fact that a fuse is designed to burn at a rate of approximately 40 seconds per foot or 120 seconds per yard, the fuse is cut into lengths sufficient enough to allow for both an ignition of the fuse and a period of time for the safe retreat of the user.

The fuse used on February 9 was manufactured by the defendant and was purchased by Gilpin County from McKay's Hardware Store in Blackhawk, Colorado.

The defendant's fuse had been purchased by the county for a period of several years in packages of the manufacturer containing two 50 foot coils.

The plaintiff and Bittinger had set off a blast of several sticks of dynamite in the morning. In the afternoon, they prepared five sticks of dynamite for discharge in the usual manner, that is, while sitting in the cab of the county truck, they cut five lengths of approximately four feet in length from the same roll of safety fuse which they had used during the morning. The lengths of fuse were measured by the inside width of the cab from door to door. The plaintiff and Bittinger then attached a cap to one end of each fuse, inserted the cap into a hole in each of the sticks of dynamite, and covered the attachment to the stick of dynamite with

masking tape. They then split the other ends of the lengths of fuse with a knife in order to make the ignition of the fuse easier.

One of the most common means of igniting a fuse is by use of a "lead spitter", which when ignited, causes hot melted lead to fall upon the powder in the split end of the fuse, making ignition of the fuse quicker and more certain than ignition with matches or a cigarette lighter.

On the afternoon of February 9 when the five sticks of dynamite had been prepared, the plaintiff took the sticks of dynamite downstream from the road, placing them two to three feet apart upon the ice, and covering each of the sticks with snow to direct the force of the blast downward into the ice. Bittinger and the plaintiff each having some "lead spitter", ignited the spitters and began to light the fuses. The fuse nearest the road was lit first by Bittinger; following that, the second was lit by the plaintiff, the third by Bittinger, and the fourth by the plaintiff. Bittinger testified that as he started to light the fifth fuse, he saw the fuse attached to the fourth stick of dynamite burning much too rapidly and said to the plaintiff, "Let's get out of here." About that time, there was an explosion which threw Bittinger and the plaintiff in opposite directions. The plaintiff testified that he later heard three other explosions.

Although the circumstantial evidence is not entirely consistent and there is some conflict, the Court finds that the fuse attached to the dynamite referred to as stick number four burned rapidly and much faster than such fuse is designed to burn and that the plaintiff, after igniting the fuse, did not have an opportunity to retreat to a place of safety and, furthermore, that such rapid burning was caused by some defect in the fuse attached to the number four stick of dynamite. The Court therefore concludes that the defective fuse caused the premature explosion which injured the plaintiff.

The evidence does not disclose what the nature of the defect was or whether or not such defect existed when it left the possession of the defendant manufacturer.

In Newton v. Admiral Corporation, 280 F.Supp. 202, this Court, in the absence of Colorado statutory or case law in point, adopted the rule set forth in Rest. Torts, Second, Section 402A which states:

"(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

"(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller."

We held, in effect, that this rule implies a warranty by the seller that the product is free from defects which render the product unreasonably dangerous to the user or his property and that such rule applies to the manufacturer of the product as well as any retail dealer, distributor, or wholesaler thereof.

In *Newton*, we applied this rule to deny a motion to dismiss a claim which stated facts sufficient to meet the requirements of this rule.

In this case, we apply the rule to the facts found by the Court after trial wherein the Court finds that the fuse was defective and that the defect was

the proximate cause of the plaintiff's injuries. However, this is not sufficient to permit the plaintiff to recover. Comment (g) on the Restatement rule above referred to states:

"The burden of proof that the product was in a defective condition at the time that it left the hands of a particular seller is upon the injured plaintiff; and unless evidence can be produced which will support the conclusion that it was then defective, the burden is not sustained."

As we have previously stated, there is no evidence of the nature of the defect, what caused the defect or that the defect existed when it left the hands of the defendant.

The plaintiff has not sustained his burden of proof and judgment should be entered for the defendant.

It is therefore ordered that judgment of dismissal of the complaint against the defendant enter forthwith and that the defendant have judgment for its costs to be taxed by the Clerk of this Court upon a filing of a bill of costs.